UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BONNIE CARTNER, DIMITRI CRANE,
LYNN OBERENDER and ANN STATES,**

    **Plaintiffs,**

**-vs-**                   **Case No. 6:09-cv-1293-Orl-31DAB**

**HEWITT ASSOCIATES, LLC,**

    **Defendant.**

_____

## ORDER

This matter came before the Court without oral argument upon consideration of Plaintiffs', Bonnie Cartner, Dimitri Crane, Lynn Oberender and Ann States ("Plaintiffs"), Amended Motion for Conditional Certification of a Collective Action (the "Motion") (Doc. 72), and Defendant's, Hewitt Associates, LLC ("Defendant"), response in opposition thereto (the "Response") (Doc. 76). Upon careful review, the Court concludes that this case is not appropriate for collective treatment.

**I.**

**A.**

Plaintiffs brought this Fair Labor and Standards Act ("FLSA")[1] suit on June 29, 2009, alleging that Defendant routinely failed to pay Plaintiffs and other similarly situated employees their overtime pay in accordance with 29 U.S.C. §§ 207 and 215. (Doc. 2).[2] In their Amended

---

[1] *See generally* 29 U.S.C. §§ 201 to 209.

[2] Plaintiffs have also asserted a claim for unpaid wages pursuant to FLA. STAT. § 448.08. (Doc. 16, ¶¶ 24-27).

Complaint, Plaintiffs allege that Defendant routinely failed to compensate them and other Customer Service Associates ("CSA" or "CSAs") for certain pre-shift work, work during unpaid lunch breaks and post-shift work. (Doc. 16, ¶¶ 12-16).

On October 17, 2009, the Court denied Plaintiffs' Motion for Conditional Certification of a Collective Action. (Doc. 31). The Court found, *inter alia*, that Plaintiffs had failed to file a single affidavit or declaration from other similarly situated employees and had not addressed the extent to which individualized inquiries into each employee's day-to-day activities would be necessary in this case. (Doc. 31 at 4-5). Assuming such individualized inquiries would be necessary, the Court observed that "this case would not appear to be an appropriate candidate for collective treatment." (Doc. 31 at 5).

In their Amended Motion for Conditional Certification of a Collective Action, Plaintiffs again move the Court to conditionally certify a nationwide collective action consisting of all present and former employees who worked as CSAs at any time on or after August 10, 2006. (Doc. 72-1 at 1-2).[3] Defendant has more than 23,000 employees worldwide and Plaintiffs contend that thousands of these employees should be included in this case. (Doc. 16, ¶ 22). Plaintiffs, however, only worked in Defendant's Orlando office.[4] (Doc. 72 at 6).

---

[3] Alternatively, Plaintiffs argue that the class should include all current or former CSAs who worked in Defendant's Orlando, Florida, Woodlands, Texas, and Charlotte, North Carolina offices, (Doc. 72 at 13 and 15), or, at a minimum, all CSAs who worked at Defendant's Orlando office. (Doc. 72 at 15).

[4] Defendant's Orlando office employs approximately 1,500 individuals. (Doc. 72 at 6).

**B.**

Defendant is a human resource consulting and outsourcing company.  (Doc. 72-3 at 1).  Its CSAs handle telephone inquiries from individuals whose companies have outsourced the management of their health, savings, and retirement plans to Defendant.  (Doc. 72 at 7).  Defendant's CSAs are assigned to different teams and have different supervisors, who have discretion in how they manage the attendance, timekeeping, and performance of their CSAs.  (Docs. 72 at 7 and 76 at 4).  There are 31 different teams at Defendant's Orlando call center.  (Doc. 76-2, ¶ 10).  Plaintiffs work or worked[5] on only three different teams:  Teams 1, 2 and 3.  (Doc. 72-5, ¶ 3, Doc. 72-7, ¶ 4, and Doc. 72-8, ¶ 4).

According to Plaintiffs, all of Defendant's CSAs are required to be ready to take their first call at the moment their shift begins.  (Doc. 72 at 8).  To do so, Plaintiffs aver that they must arrive at Defendant's office anywhere between five and forty-five minutes prior to the start of their shift because of the time that it takes to clear Defendant's security check-point, proceed to their workstations, boot up their computers, and login to various software applications.  (Doc. 72 at 8).  Furthermore, Plaintiffs swear that they are often forced to remain on calls that extend into their

---

[5]The lead Plaintiff, Bonnie Cartner, was terminated on December 4, 2009 after Defendant learned that she was repeatedly, and over the course of several months, emailing screen shoots of clients' confidential information to her personal email address.  (Doc. 76-4, ¶¶ 3-9).  Cartner has not sought leave to assert a retaliation claim in this suit, but recently filed a Family Medical Leave Act case against Defendant in state court that purports to include an FLSA retaliation claim; Defendant removed that case to this Court on March 16, 2010.  *See Cartner v. Hewitt Associates.,L.L.C.*, 06:10-CV-409 (M.D. Fla. 2010) (Doc. 3, ¶¶ 56-58).  While the contours of Cartner's retaliation claim are unclear, she has represented to the Court that this latest suit is not related to the instant case.  *Cartner*, 06:10-CV-409 (Doc. 12).

lunch breaks or that last longer than their scheduled shift.[6] Plaintiffs contend that they are not compensated for any of this time and that they routinely work between forty-one and forty-four hours per week without receiving any overtime compensation. (Doc. 72 at 9).

According to Defendant, only newer CSAs are required to be ready to take calls at the start of their shifts. (Doc. 76 at 4). Some CSAs handle specialized client projects and may spend little or no time on the phone. (Doc. 76 at 4-5). Others start their shifts with thirty-minutes of off-phone work and do not login to their computers until after the start of their shifts. (Doc. 76 at 5). Regardless of when they start their shifts, CSAs' pay is based on the time cards that they submit – not by their scheduled hours[7] or the time logged on Defendant's phone system. (Doc. 76 at 8). Defendant instructs its CSAs to record their time to the closest fifteen minute increment. (Doc. 76 at 8). Given this rounding practice, CSAs are not compensated for work of seven minutes or less, but are compensated for work of more than seven minutes. (Doc. 76 at 8). When CSAs work prior to or after their shifts,[8] they are instructed to include that extra work time on their time cards.

---

[6] Three of the named Plaintiffs (Cartner, Oberender and States), however, were given workplace modifications providing them with set times for lunch and rest breaks. (Doc. 76-5, ¶ 12-14). While it is unclear whether other employees have been given such modifications, none of other named Plaintiffs appear to have been given such modifications.

[7] Plaintiffs Cartner and Crane specifically swore that the "calculation of [their] pay was based strictly on [their] regularly scheduled work shift" – not based on the submission of any time card or time sheet. (Docs. 72-4 and 72-11, ¶ 4). However, Plaintiffs Dicocco and Taylor swore that they were expected to submit time sheets and that if their recorded time deviated from their scheduled hours, they were required to submit their time sheets to their supervisor for further approval. (Docs. 72-7 and 72-8, ¶ 10). None of the Plaintiffs averred that they submitted time sheets that were rejected by their supervisors or that they were not paid overtime for any time included in their time sheets.

[8] According to Defendant, the shifts of its Orlando-based CSAs vary widely. (Doc. 76 at 5). Some CSAs are scheduled to start their shift with off-phone work and do not boot up or login to their computers until five to thirty minutes after the start of their shift. (Doc. 76 at 5). Others start their

(Doc. 76 at 8). With respect to lunch breaks, CSAs may choose to record the time of calls that extend into their break and simply come back late from lunch, or they may choose to request a full fifteen-minute scheduling adjustment.[9] (Doc. 76 at 9). Indeed, CSAs frequently record and are paid overtime due to customer calls that extend into their lunch breaks or run longer than their scheduled shift time.[10] (Doc. 76 at 8-9). Finally, Defendant contends that, as a matter of policy, it prohibits CSAs from performing any off-the-clock work. (Doc. 76 at 7).

## II.

The decision to conditionally certify a collective FLSA action lies within the sound discretion of the Court. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). However, the Court "should satisfy itself" that there are similarly situated employees who desire to opt-in before certifying a collective action. *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

In pertinent part, 29 U.S.C. § 216 provides:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer. . .

---

shift by taking phone calls, but are not required to boot up and login to their computers – instead, they simply login to Defendant's phone system, which only takes a few seconds. (Doc. 76 at 6). During the day, some CSAs may be expected to stay on the phone, while others are expected to attend to client projects and other off-phone work. (Doc. 76 at 6).

[9]Plaintiff Oberender swore that Defendant has changed its meal break policy "more than once" in the last three years and that current policy states that she "may adjust [her] lunch break. . .only in increments of [five] minutes." (Doc. 72-6, ¶ 5).

[10]Most of the 31 client teams in Defendant's Orlando office report – and are paid – overtime based on calls that extend beyond CSA's scheduled shifts. (Doc. 76-3, ¶ 20).

>by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Within the Eleventh Circuit, district courts are encouraged but not required to adopt a two-tiered approach to certification of classes in an FLSA case. *Hipp*, 252 F.3d at 1219 (11th Cir. 2001). Under this two-tiered approach, the court's initial decision to certify a collective action often comes early in the case. At the first tier, the Court's certification decision is based primarily on pleadings and affidavits, and the Court applies a "fairly lenient standard" in determining whether the plaintiffs are similarly situated. *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).

The named plaintiff carries the burden of demonstrating that notice of the action should be given to other employees. Although this burden is low and can often be met by "detailed allegations supported by affidavits," *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), it is not "invisible" and cannot be based on the conclusory allegations of a few employees. *Brooks v. Rainaldi Plumbing, Inc.*, Case No. 06-CV-631, 2006 WL 3544737, at * 2 (M.D. Fla. Dec. 8, 2006); *see also Simpkins v. Pulte Home Corp.*, Case No. 08-CV-130, 2008 WL 3927275, at * 2 (M.D. Fla. Aug. 21, 2008). At a minimum, the named plaintiff should offer affidavits or declarations of consent to join by other individuals explaining that they are similarly situated, wish to join the suit. *See*, *e.g.*, *Sanchez v. Ocwen Loan Servicing, LLC*, Case No. 06:06-CV-1811, 2007 WL 809666, at *2 (M.D. Fla. Mar. 15, 2007).

## **III.**

This case is not appropriate for collective treatment. First, notwithstanding this Court's prior order, Plaintiffs have still failed to include a single affidavit from a similarly situated employee working in any location other than Orlando, Florida. Second, within Defendant's Orlando office alone, it is far from clear that putative class members hold similar positions as Plaintiffs. Plaintiffs work (or worked) on only three of thirty-one different teams and each team has its own supervisor with the discretion to manage, *inter alia*, CSAs' timekeeping and performance. Defendant has sworn – and Plaintiffs have failed to adequately rebut – that there are significant differences in the manner in which a given team's CSAs start and end their shifts, take breaks, and handle client calls (if they take calls at all, as some CSAs appear to work on specialized projects). Third, there appear to be significant differences amongst even the named Plaintiffs. Cartner, Oberender and States, for instance, were each given special workplace modifications that appear to affect their unpaid break claims; other Plaintiffs received no such modifications. Furthermore, some Plaintiffs swore that the calculation of their pay was based strictly on their scheduled shifts while others swore that they were expected to submit time sheets. In short, these and other individualized inquiries will need to be made on a plaintiff-by-plaintiff basis. Accordingly, the Court will exercise its discretion and deny certification of a collective action.

## IV

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Amended Motion for Conditional Certification of a Collective Action (Doc. 72) is **DENIED** with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 31, 2009.

Copies furnished to:

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Counsel of Record
Unrepresented Party